# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **United States** | : | |
| | : | **Case No. 3:10-cr-8 (VLB)** |
| **v.** | : | |
| | : | **October 5, 2011** |
| **Eugene Boisvert** | : | |

## MEMORANDUM OF LAW DENYING DEFENDANT'S [Doc. #82 & 83] MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL

### INTRODUCTION

On May 10, 2011, a jury returned guilty verdicts against the Defendant, Eugene Boisvert, on both counts of a two count indictment charging him with Mann Act violations, including illegal internet use. He was convicted of Count One, charging him with the Use of an Interstate Facility to Attempt to Persuade a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b) and of Count Two, charging him with Interstate Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. §§ 2423(b) & (e).

On May 13, 2011, the Defendant filed the instant Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 on the basis that the Government failed to adduce proof that he committed the crimes as alleged in the Indictment. In addition, and in the alternative, Mr. Boisvert seeks a new trial on both counts of the Indictment pursuant to Federal Rule of Criminal Procedure 33.

In his memorandum of law in support of his motions, the defendant also challenges the courts jury charge for the first time.

By a memorandum dated June 6, 2011 the Government, objected to the defendant's motion on the grounds that it had proved both counts of conviction beyond a reasonable doubt and, therefore, he is not entitled to a judgment of acquittal or a new trial. For the reasons stated below, the defendant's motions are DENIED.

## FACTUAL BACKGROUND

To assess whether any rational trier of fact could find Mr. Boisvert guilty beyond a reasonable doubt, the Court must review the totality of the evidence in context. *See, e.g.* United States v. Best, 219 F.3d 192 (2d Cir. 2000), cert. denied, 121 S. Ct. 1733 (2001). At trial, lasting from April 5, 2011 to April 9, 2011, the Government introduced witnesses to and written documentation of the defendant's actions. Included among the witnesses was Hartford Police Detective P.J. Clark, who posed in an undercover capacity as 14 year-old Amber Randolph using the online screen name of "modelgrl2012" as the first underage persona with whom the defendant was documented to have contact. The record witnesses whose testimony was introduced was Milford Police Detective Robert Nash, who posed in an undercover capacity as the 14 year-old Jessie Mills and used the online screen name of "woodmont_girl." FBI forensic analyst Jeffrey Rovelli testified as to his review of the mobile telephone used by the Defendant.

Additional testimony was presented by New Britain Police Detective Jennifer Yarsowich, who left two telephone messages for the Defendant while posing as the 14 year-old Jessie Mills, FBI Special Agent Kenneth Keller, who assisted with the Defendant's arrest and obtained Defendant's post-arrest statement, and FBI Special Agent Mandy Fellenz, who survailed Mr. Boisvert on the day of his arrest from his home in Springfield, Massachusetts to Milford, Connecticut.

The evidence supporting the jury's convictions also included more than 40 recorded conversations between the defendant and task officer Nash in which Mr. Boisvert discussed sexually explicit topics, photographing and marrying the task officer's internet persona, a 14 year-old Jessie Mills, and these conversations took place on an internet chat site supported by Yahoo!  The Government established, by forensic evidence, authenticity chats before putting 30 of them into evidence.  The chat transcripts were also initialed by Mr. Boisvert, acknowledging that they were his.

As early as his first conversation with Jessie, Mr. Boisvert established that she was 14 and he was 39 years old and discussed with her sexually explicit topics:

> [Y]ou looking for a older man . . . i would treat you like a princess you have other pcis (sic) or cam . . . thank you so you want to date a older man . . . oh I will never hurt you only take care of you an dlove (sic) you . . . yeah i will teach you what to do unless you already know . . . i want a young gf . . . yeah we could date and that . . . make you my girl . . . you want to have a cock in you rhand (sic) . . . i am kind of large i wont hurt you.

Gov't Ex. 26. From that Yahoo! chat forward, Mr. Boisvert continued to discuss sexually explicit topics and assure this girl that he would love and take care of her, wanted her to have his child and forever. For example, on July 16, 2010, he told Jessie, "i want to hold my princesses hand and put suntan lotion on youeverywhere (sic)." Gov't Ex. 36. On July 27, 2011, he continued:

> [S]o are you shaved down there . . . you have hair down there . . . well when yhou (sic) are old enought (sic) i  want to shave you bald down there . . . i love no hair down there . . . shve (sic) it all then rub it you wil (sic) like it . . . i would never hurt you but the first time we have sex will hurt and when i take your virginity you will bleed for a second . . . rite i  wuold (sic) take care of you we put towels that we can through (sic) awayon (sic) the bed then that will be it . . . do nto (sic) tell anyone i want you to have my baby . . . good so yeah eventually when we get married . . . you wil (sic) be my baby for ever . . . ty so what if i wanted to try something else before you turn 18 . . . like if i asked you to placy (sic) with my cock would you . . . [pregnant pause] god that is important . . . i would not get ou (sic) preg for a while atlease (sic) like 5 years . . . you are my last gf there will never be another . . . good you are my baby forever no when ever you want to do anything new you can do it first i want to kiss you on the first day though frenck (sic) kissing . . .  i might touch your butt when i put loton (sic) on and you tits . . . i never met a such a young girl before i was scared you were trying to set me up with the comps (sic) . . . i never had a gf 14 before but i am ok with it as long as you are iwth (sic) me i will never hurt you andi (sic) will always love you and take care of you just don't be tricking me with the cops.

Gov't Ex. 39. Indeed, although expressing sexual desires towards Jessie, he also articulated a fear of getting in trouble with law enforcement evincing his knowledge that engaging in behavior was illegal. Id. In spite of his expressed concerns, on July 31 the conversations in which he expressed his desire to have sexual relations with the 14 year old continued:

> [I] asked if you were alone where your mom was . . .oh cool so you didn't say anything to me laying naked in bed right now . . . i want some of your cookies . . . yeah i thought you meant me eating your

**4**

**cookies . . . you are so inccent (sic) . . . you are the best too when i meant cookies i meant just eating your pussy haha.**

Gov't Ex. 47.

Mr. Boisvert first proposed meeting Jessie at the beach near her home in Connecticut on July 12, 2010. Gov't Ex. 33. He first asked to meet Jessie in Connecticut on July 27, 2010. Gov't Ex. 38. Mr. Boisvert continued to make plans to meet Jessie at Anchor Beach in Connecticut and encouraged her to have a valid excuse for her absence from familial adult supervision on the day he planned to meet her and instructed her to sleep over a friend's house the night before their 10:00 AM planned meeting:

> [s]o what you telling your mom . . . yeah tell you (sic) aunt you can do it on sat and we can spend all day an dnight (sic) together friday (sic) . . . so for sure you should tel (sic) you (sic) aunt that something important came up on friday (sic) adn (sic) see if you can work with her on sat then me and you be together all day freiday (sic)  . . i be there by 10 tel (sic) you mom you are staying over a friends house thursday (sic) night . . . i know i do nto (sic) care about the age difference . . . so say we really love each other and want to have sex before you turn legal age will it be ok . . . condoms i wuold (sic) use . . . so what happens if we want to have sex before you turn 17 . . . i would always take it slow likei (sic) said the first time when i take your virginity will bleed a little it happens . . . oh yeah i will teach you i wan tyou (sic) to explore when we fk just do what you want with your hands.

Gov't Ex. 54. He also told her to lie to her aunt.

On August 5, right before they were to meet at the beach, Mr. Boisvert again expressed his love for her, his desire to have sexual relations with her and his knowledge that what he was doing was illegal:

> [Y]ou are not going to get me in trouble . . . i just see things on tv about this kind of stuff . . . like when a guy thinks it is a certain perosn (sic) then when he shows up he gets arrested because they

**5**

> set him up . . . for being with a girl under age . . . just cant wait for you to get older . . . you are my girl firiend (sic) baby i love you. . . call me when you (sic) mom goes to bed . . . try ok even if you haev (sic) to be sneakky (sic.).

Gov't Ex. 59. All of these chats were admitted as full exhibits, read into the record and given to the jury. In sum, the Government presented overwhelming evidence that Mr. Boisvert discussed sexually explicit content on at least six occasions at length, discussed Jessie's youth on at least five occasions, and planned to meet on a beach covertly without her family's knowledge, at least seven times. This evidence also establishes Mr. Boisvert's prurient intent, the sole issue in contention in this case.

Mr. Boisvert was the sole witness in his defense. He admitted that he had sexually explicit chats with Nash and that, on the date of his arrest, he signed copies of the chats with Nash that were entered into evidence. He challenged the authenticity of some of the chats because they appeared in a different font. He testified that he was frightened by the police during his arrest, suggesting that what he told the police was untrue. The Defendant admitted that he chatted with Nash and traveled to Connecticut but denied any intent to engage in sexual activity with a minor. Instead, he testified that the sex-talk was merely his way of trying to "scare" Jessie from continuing to chat with adults online and when this failed, he traveled to Connecticut to inform her mother of her daughter's activities. Specifically, he testified that his plan was to see which residence she came out from and later go there to inform an adult of her internet conduct.

When subjected to cross examination, he could not explain why he did not refer the matter to law enforcement or juvenile authorities such as school officials or the Connecticut Department of Children and Families and, instead repeatedly engaged in sexually explicit and admittedly illegal discussions with her. He admitted he did not try to call Jessie's school (Trial Tr., May 6, 2011 at 59), local law enforcement (Id. at 56). Nor did he bring a copy of the chats with him to show to Jessie's mother as these were not found in his car when he was arrested at the location where he believed Jessie to live. Moreover, he never explained how he would tell her mother since he instructed her not to sleep at her home on the night before their planned meeting and, instead to sleep over a friend's house.

Both the government and defendant acknowledge that the defendant made statements to law enforcement at the time of his arrest. The testimony presented by the arresting officers and the defendant himself indicate that the defendant "might touch certain parts of Jessie," that Mr. Boisvert signed several of the print-outs of the chats provided by the government affirming the defendant's acknowledgement that he participated in these explicit Yahoo! conversations, and that he knew she was under 16 years of age.

In summary, the Defendant admitted that he used the internet, that the chats were his, that he traveled to Anchor Beach in Milford, Connecticut as discussed in his chats with officer Nash, that he was arrested in the vicinity of the prearranged meeting spot, and that his car was seized with a beach towel, swim trunks, and MapQuest directions from his home in Springfield, Connecticut to

Anchor Beach in Milford, Connecticut. Indeed, at trial, the only two issues in dispute were the defendant's 1) intent while chatting with Jessie and 2) his intent in traveling from Springfield, Massachusetts to Anchor Beach, Connecticut, a fact confirmed by his counsel at sentencing.

## THE COURT'S CHARGE TO THE JURY

The defense takes issue with the Court's jury charge despite having acquiesced to the charge. The court afforded the parties three opportunities to object and on each occasion, he acquiesced. He failed to object either after receiving a copy of the charge the court proposed to give, just prior to its being given or after it was given when the Court expressly inquired of counsel on the record whether they had objections. Trial Rec. May 9, 2011, 1:37:05PM.

Specifically, Mr. Boisvert alleges that the Court erred in failing to instruct the jury on Count I that the defendant took a substantial step in committing the charged offense. Def. Mem at 8. In addition, Mr. Boisvert claims that the court erred in failing to charge the jury on Count II that the defendant took a substantial step in committing the offense and that his dominant purpose in traveling to Connecticut was to engage in illicit sexual activity. Def. Mem at 9.

Count I charged Mr. Boisvert with the use of an interstate facility to attempt to persuade a minor to engage in sexual activity in violation of 18 U.S.C. §2422(b). This section provides that:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces,

8

entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The Court instructed jury with respect to Count I as follows:

To find Mr. Boisvert guilty of the use of an interstate facility to attempt to persuade a minor to engage in sexual activity, as charged in Count One, you must find that the Government has proven the following elements beyond a reasonable doubt: First, that Mr. Boisvert used a facility of interstate commerce, that is, a computer connected to the internet or a telephone in an attempt to persuade, induce, or entice an individual under the age of 18 to engage in sexual activity, as charge; Second, that Mr. Boisvert believed that such individual was under the age of eighteen; and Third, that the proposed and anticipated sexual activity was in violation of Connecticut law.

Trial Rec. May 9, 2011, 12:48:27PM. The two relevant Connecticut statutes detailed in the jury instructions are C.G.S. §53a-73a (Sexual assault in the fourth degree: Class A misdemeanor or Class D felony)[1] and C.G.S. §53-21 (Injury or risk of injury to, or impairing morals of, children. Sale of children).[2] Trial Rec. May 9, 2011 at 12:49:56. Following the instruction and after request for any objection by the parties to the charge as given, the defendant stated that he had none. Trial Rec., 1:37:05PM.

---

[1] The statute defines in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when (1) Such person intentionally subjects another person to sexual contact who is . . . (B) thirteen years of age or older but under fifteen years of age and the actor is more than three years older than such other person."

[2] The statute defines in relevant part: "(a) Any person who (1) willfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that . . . the morals of such child are likely to be impaired . . . or has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child." The Connecticut Appellate Court has held that a "substantial step" towards the commission of this crime is supported on proof that the defendant drove to a prearranged meeting place and that he engaged in sexually explicit conversations. State v. Nero, 122 Conn.App. 763, 782 (2010).

Similar to the charge given by the Court, the model jury instructions advise the following charge for §2422(b):

> In order to prove the defendant guilty of using a facility of interstate commerce (or the mails) to persuade (*or* induce *or* entice *or* coerce) an individual to engage in illegal sexual activity (*or* prostitution), the government must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant used a facility of interstate commerce (*or* the mails) as alleged in the indictment;
>
> Second, that the defendant knowingly persuaded (*or* induced *or* enticed *or* coerced) [name of individual] to engage in sexual activity (*or* prostitution);
>
> Third, that this sexual activity would violate [name of state] law; and
>
> Fourth, that [said individual] was less than eighteen years old at the time of the acts alleged in the indictment.

Fed. Jury Instructions ¶64.03. This model instruction, although organized differently from the actual charge given contains the exact same elements Mr. Boisvert's jury heard on May 9, 2011.

Count II charges the defendant with the use of interstate travel with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. §§2423(b) and (e) which provides:

> (b) Travel with intent to engage in illicit sexual conduct.--A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.
>
>          *                *               *
>
> (e) Attempt and conspiracy.--Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.

As to Count II, the Court, charged the jury consistent therewith:

> To find Mr. Boisvert guilty of the crime of interstate travel with intent to engage in illicit sexual conduct, as charged in Count Two, you must find that the Government has proven the following elements beyond a reasonable doubt: First, that Mr. Boisvert traveled in interstate commerce and Second, that Mr. Boisvert acted with the intent to engage in illicit sexual conduct with a minor.

Trial Rec., 1:05:20PM.

Similar to the charge given by the Court, the model jury instructions advise the following charge for §§2423(b) and (e):

> In order to prove the defendant guilty of interstate travel to engage in illicit sexual conduct, the government must prove each of the following elements beyond a reasonable doubt:
> First, that the defendant traveled in interstate or foreign commerce; and
> Second, that defendant acted with the intent to engage in illicit sexual conduct.

Fed. Jury Instructions ¶64.05. Again, this model instruction substantively identical to the actual charge given in that they both reflect the same elements as required by the statute.

The Defendant cites no authority for his claim of error. Further, his claim is not supported by the law. The Court will first address his claim that the Court should have instructed the jury that is must find that Boisvert's dominant purpose in traveling to Connecticut was to engage in illegal activity. Def. Mem. at 5-12.

Only where there are two alleged coincident purposes asserted for the travel, determination of the "dominant purpose" is necessary if the Mann Act has been violated. *See e.g.* United States v. Sirois, 87 F.3d 34 (2d Cir. 1996) (finding that where boys were sexually assaulted during a camping trip where camping

and illicit sexual activities occurred, the banned activities must have been a dominant purpose of the interstate travel.); <u>United States v. Hayward</u>, 359 F.3d 631, 638 (3d Cir. 2004) (affirming the instruction that an illegal sexual activity, namely, intercourse and touching of teenage cheerleaders on an international competition trip with their coach in violation of the Mann Act must not have been merely incidental to the trip but rather a dominant purpose and noting that cases which do not involve multiple asserted motives for interstate travel are irrelevant for application to those that do). *See* <u>Mortensen et al. v. United States</u>, 322 U.S. 369, 374 (1944) (Holding that it is essential to the Act that the interstate travel must have had its object or means of effecting or facilitating the proscribed illicit activities and the petitioners in that case traveled for purely vacation purposes, their conviction was reversed.); <u>Hansen v. Haff</u>, 291 U.S. 559, 563 (1934) (reaffirming the premise that "the transportation denounced must have for its object or be a means of effecting of facilitating the sexual intercourse of the participants. If the purpose of the journey is not sexual intercourse, though that be contemplated, the statute is not violated"). However, in a case such as this where there are two mutually exclusive purposes alleged, there can be only one purpose versus subordinate purpose and thus a dominant purpose charge is impertinent.

In this case, the defendant admits there are only two mutually exclusive purposes asserted for both counts: to engage in prohibited sexual activity with a person the defendant believed to be a minor, advanced by the Government or to

prevent a perceived minor from engaging sexual conduct, as advanced by the defendant. These purposes cannot coexist and are not coincident. Either one or the other can occur but not both. Therefore, as in <u>Mortensen</u> and its progeny, "dominant purpose" is unwarranted.

Just as there is no inclusion of "dominant purpose" in either the statutory language or the model jury instructions, there is no inclusion of "substantial step" in either as well. Nevertheless, the defendant argues that this element should have been charged with respect to Counts I and II. He cites and this Court has found no applicable authority for such a charge.

The defendant and the Court has not found any Second Circuit or United States Supreme Court decision counseling the Court to instruct the jury that the defendant must have taken a "substantial step" in furtherance of the commission of the Mann Act offenses. However, the Sixth Circuit is quite clear in its extension of the Second Circuit's general "substantial step" analysis to Mann Act offenses. *See* <u>United States v. Bailey</u>, 228 F.3d 637 (Tenn. 2000). In this case, the Sixth Circuit affirmed the appeal of defendant Robert Owen Bailey from his conviction in the United States District Court for the Western District of Tennessee finding that his conviction under §2422(b) only required a finding of the defendant's intent to persuade or attempt to persuade and not of an intent to actually perform the prohibited sexual acts. <u>Id.</u> Applying the Second Circuit's "substantial step" standard from <u>United States v. Manley</u> to the Mann Act, the Sixth Circuit held that "[t]he prosecution must have presented evidence of

objective, overt acts that would allow a reasonable jury to find Bailey had taken a substantial step towards persuading, inducing, enticing, or coercing a minor to engage in illegal sexual activity." <u>Bailey</u> at 640 (extending: "A substantial step must be something more than mere preparation.... [I]t must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." <u>Manley</u> 632 F.2d 978, 987-88 (2d Cir. 1980)). Because the evidence at trial, both testimonial by several minors who met Bailey in chat rooms online and forensic from Federal Bureau of Investigation (FBI) investigation of the defendant's computer, clearly indicated that the defendant urged the individuals who he knew to be minors to meet him and perform oral sex with him, the conviction was upheld. *See also* <u>U.S. v. Farner</u>, 251 F.3d 510 (5th Cir. 2001) (Holding that the defendant intended to engage in sexual acts with a 14-year-old girl, and took substantial steps by arranging to meet her. Once again, Mr. Boisvert does not contest that he came from Massachusetts to Connecticut to see Jessie. He admitted he took the substantial step of arranging in chats to see her and actually followed through with the plan. The sole issue in contention was his intent in planning and traveling to meet her.

As Mr. Boisvert admitted taking a substantial step, charging the jury to decide whether he took a "substantial step" was not necessary. In fact, it would have been confusing and thus, not appropriate.

## RULE 29 – MOTION FOR JUDGMENT OF ACQUITTAL

A motion for judgment of acquittal is governed by Federal Rule of Criminal Procedure 29. It provides, in relevant part that:

(a) [T]he court on the Defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

(c)(1) A Defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

When a Defendant moves for a judgment of acquittal, a court:

[M]ust determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If [it] concludes that upon the evidence there must be such a doubt in a reasonable mind, [it] must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond all reasonable doubt, the motion must be granted. If [it] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [it] must let the jury decide the matter.

United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (Quoting United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972)). If the evidence viewed in a light most favorable to the Government gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt" and this court should enter an acquittal. United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002) (*quoting* United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996) (internal quotation marks and emphasis removed)).

A district court can enter a judgment of acquittal on the grounds of insufficient evidence only if, after reviewing the evidence, both direct and circumstantial, in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See* <u>Jackson v. Virginia</u>, 443 U.S. 307, 318 - 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); <u>United States v. Reyes</u>, 302 F.3d 48, 52 - 53 (2d Cir. 2002); <u>United States v. Walker</u>, 191 F.3d 326, 333 (2d Cir. 1999).

In making a motion for judgment of acquittal, "a Defendant who challenges the sufficiency of the evidence supporting his conviction 'bears a heavy burden.'" <u>United States v. Finley</u>, 245 F.3d 199, 202 (2d Cir. 2001). Beside the court viewing the evidence in a light most favorable to the government, the court must recognize it is the jury's domain to determine the weight of the evidence and the credibility of witnesses and it is the jury's choice as to competing inferences that can be drawn from the evidence. <u>United States v. Guadagna</u>, 183 F.3d 122, 129 (2d Cir. 1999); <u>United States v. Morrison</u>, 153 F.3d 34, 49 (2d Cir. 1998). The evidence must be viewed in conjunction, not in isolation; and its weight and the credibility of the witnesses is a matter for argument to the jury, not a ground for legal reversal. *See* <u>Best</u> at 200.

The jury is "exclusively responsible" for determinations of witness credibility. <u>United States v. Strauss</u>, at 696 (2d Cir. 1993). In assessing the weight of the evidence, the jury is free to credit all or part of the testimony of a given

witness.  Id.  Moreover, the task of choosing among competing, permissible inferences is for the fact-finder, not the reviewing court.  Best, 219 F.3d at 200. The Government need not disprove every reasonable hypothesis consistent with the Defendant's innocence. See Strauss, 999 F.2d 692, 696.  Rather, a jury's decision to convict may be based solely on circumstantial evidence and any reasonable inferences based upon the evidence.  Id.

In short, this Court may not disturb a conviction on grounds of legal insufficiency absent a showing that "no rational trier of fact could have found each essential element of the crime beyond a reasonable doubt."  United States v. Walsh, 194 F.3d 37, 51 (2d Cir. 1999).  "The ultimate question is not whether we believe the evidence adduced at trial established Defendant's guilt beyond a reasonable doubt, but whether any rational trier of fact could so find."  United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998) (emphasis in original).  As a result, in order to succeed, a defendant seeking a judgment of acquittal must demonstrate that no "rational trier of fact could [find] the essential elements of the crime charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also United States v. McDermott, 245 F.3d 133, 137 (2d Cir. 2001)(internal quotation marks omitted); United States v. Bryce, 298 F.3d 346, 352 (2d Cir. 1999).

Here there was overwhelming evidence of the Defendant's guilt. As discussed above, Mr. Boisvert asked Jessie if she was a virgin and explicitly described what would happen when he took her virginity.  He discussed having

17

sexual contact with her and intercourse before she was of legal age. Gov't Ex. 24, 39, 47, 54, and 59. He also discussed marrying Jessie and buying her a ring. He discussed having a child with her and caring for her and taking care of her forever. Furthermore, Mr. Boisvert admitted in multiple recorded electronic conversations with two separate undercover officers that he knew it was illegal for him to have sexual conversations and interactions with a 14 year old girl. *See e.g.* Gov't Ex's. 39, 54, and 59. It was Mr. Boisvert who proposed meeting Jessie at Anchor Beach in Connecticut and proposed engaging in illicit sexual conduct during this, their first meeting. Mr. Boisvert traveled from Massachusetts to Connecticut to meet Jessie as they had arranged during recorded chats and the defendant admitted to the arresting law enforcement officers his affection for and his intent to engage in sexual activity with Jessie.

The only evidence refuting the overwhelming evidence offered by the Government was the Defendant's own incredulous testimony on the sole disputed element of each offense, namely his intent in engaging in sexually explicit conversations with a person he believed to be a 14 year old minor, his agreement to meet her and his travel on the agreed date to the locale of the agreed meeting place. Mr. Boisvert's testimony directly contradicted his chats with Jessie when he told her to sleep over a friend's house the night before their scheduled meeting.

The jury's credibility evaluation of the defendant's testimony was manifest. It was reflected in their physical manifestations of incredulity, befuddlement, and

surprise while the defendant was on the witness stand testifying that his sexually explicit language during internet chats were intended to scare her and that he arranged to meet her and traveled to the seaside locale with a beach towel and a shirt of the color and type he said he would be wearing so that he could find out where she lived and tell her family about her inappropriate conduct.  The jury not only had ample evidence to convict, they had a reasonable basis to reject the defendant's testimony.

COUNT I – INTERSTATE COMMERCE TO ENTICE

With respect to Mr. Boisvert's conviction of Count One, Use of an Interstate Facility to Attempt to Persuade a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b), the Court finds Mr. Boisvert has failed to meet his burden. In order to be found guilty of this charge, the Government only had to prove that the defendant intended to entice, persuade and induce a minor to engage in sexual acts prohibited by the statute.

As discussed above, Mr. Boisvert admitted that he used the internet to communicate with Jessie, that the computer was connected to interstate commerce, and that he believed Jessie was less than 18 years of age.  Therefore, with the first two elements stipulated, the only element for the jury to decide is the defendant's intent.  Defendant claims his intent was to "save" this kid and warn her mother.  The Government asserts that it was to engage in illegal sexual

activities with an underage girl.  For the following evidentiary bases, the Court agrees with the jury and finds for the Government.

The Government put the Yahoo! chats into evidence.  By a plain reading, they are replete with sexually explicit and indecent language whereby a reasonable jury could readily infer that Mr. Boisvert intended to engage, persuade, induce and entice Jessie to reciprocate and ultimately consummate their relationship.  As discussed above, Mr. Boisvert offered testimony impeached by his own chats as the sole defense to the Government's evidence.

Because there is ample evidence upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt, the Court will sustain the conviction on Count I.

### COUNT II – INTERSTATE COMMERCE TO ENGAGE

With respect to Boisvert's conviction of Count Two, Interstate Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b) and (e), the Court finds Mr. Boisvert has failed to meet his burden.   In order to be found guilty of this charge, the Government only had to prove that the defendant intended to travel inter-state for illicit purposes.  Because a similar element, defendant's intent in traveling from Massachusetts to Anchor Beach is in dispute and the same factual circumstances discussed at length above are relevant, the Court applies the same evidence to this analysis.

Both the Government and the defendant agree that Mr. Boisvert traveled between Connecticut and Massachusetts, that law enforcement observed his inter-state travel, that he was arrested within the vicinity of the agreed meeting location, and that MapQuest directions to the prearranged meeting spot were on his passenger seat. The Government contends that his intent to meet Jessie for illegal purposes is evidenced by the law enforcement testimony that, after having been read his Miranda rights, Mr. Boisvert admitted his intent when he told them, that he had "special feelings for" Jessie and that he wanted to "take the relationship slow" with Jessie and that, when at the beach, "she can touch my penis if she wants to" and that "if she did, she did" and "whatever happened, happened." Trial Tr. at 84. Furthermore, the Government argues that the defendant's post-arrest statement that he might touch Jessie's "clit, ass, and boobs, if it led to that" indicated that he would follow Jessie's lead, as he said he would in his Yahoo! chats. Id. Additionally, they contend that Mr. Boisvert's words from his chats are the best evidence of his intent upon meeting Jessie Mills. Gov't Mem. at 9. The Government's argument also relies on Mr. Boisvert first protesting in his post-arrest interview that Jessie was 18 and then conceding that she would be turning 16 soon. Finally, the government argues that Mr. Boisvert acknowledged that he participated in several of the chats by reading and initialing them shortly after his arrest. See Gov't Ex. 8 and 10.

Mr. Boisvert argues an alternative interpretation of his written and verbal communications. He testified that he was frightened by the police, suggesting

that what he told the police was untrue.  Therefore, he argues that when he said "he might touch certain parts of Jessie" and "that if it led to that, it led to that" the jury should not infer that he intended to do so.

Finally, the defendant argued on the stand that he was going to watch what door Jessie came out of so he could then go to that door and alert whatever adult answered the door to what Jessie was doing online.

Either his intent in traveling from his home in Springfield Massachusetts over 70 miles away to Anchor Beach in Connecticut was to engage in illicit sexual conduct or it was to inform her mother of what Jessie was doing in chat rooms on her computer.  Not both.  Again, the Government does not fail to meet its burden simply because the defendant takes the stand and denies an element of the offense.  There is nothing axiomatic about the defendant's denial.  His denial is not irrefutable and overwhelming evidence which the jury must believe.

The Court notes that the defendant's encouragement of Jessie to make an excuse to sleep over a friend's house the night before would negate the possibility that she could come from her own home.  Therefore, contrary to the defendant's testimonial plan, he would not be able to see where she was coming from to then enter and warn her mother.  Second, the Court notes that the defendant was not arrested with any of the chats in his car.  Instead of bringing "woodmont_girl's" language to prove to her mother what Jessie was saying, the defendant was arrested with MapQuest directions, a beach towel, and swimming trunks.  These two elements in addition to the Government's argument that the

defendant's words alone establish the defendant's culpability, provide evidence sufficient as a matter of law to sustain a conviction on the only element of Count II in dispute, the defendant's intent.

That the jury did not believe the defendant's testimony is clear again because they convicted him of Count II. Because there is ample evidence upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt, the Court will sustain the conviction on Count II.

In sum, there was overwhelming evidence provided by the Government with respect to the only disputed element: defendant's intent with respect to Counts I and II. It was more than that sufficient as a matter of law for the trier of fact to evaluate the credibility of the testimony and not only find defendant's testimony wanting but also to find the elements of the charged offenses proved by the government beyond a reasonable doubt. In reevaluating defendant's claim with all reasonable inferences in the Government's favor the Court finds a rational jury could have found Mr. Boisvert guilty beyond a reasonable doubt of Counts I and II.


RULE 33 – MOTION FOR A NEW TRIAL

The defendant has also filed a motion under Rule 33 for a new trial "in the interest of justice." A trial court has "broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Rule 29." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). Under

Rule 33, a court has broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). However, the perceived miscarriage of justice by the judge who rejects "all or part of a witness or witnesses testimony does not automatically entitle a defendant to a new trial." Id. at 1414. Rather, "[t]he test is whether it would be a manifest injustice to let the guilty verdict stand." Id. (quoting United States v. Reed, 875 F.2d 107, 114 (7th Cir. 1989)). The motion can be used for a claim that the jury verdict was against the weight of the evidence. United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998)(holding that a new trial is proper where the court "is convinced that the jury has reached a seriously erroneous result"). Therefore, in assessing a defendant's motion pursuant to Rule 33, the trial court must review the case in its entirety and make an objective evaluation of whether an injustice has been done to the defendant. The Second Circuit cautions that in spite of this broad discretion, granting a new trial under Rule 33 should be used sparingly.

The Court does not find the jury reached an erroneous result in the instant matter. The jury verdict was supported by overwhelming evidence and is not seriously erroneous, as discussed at length above. Without belaboring the sexually explicit content of the weighty Government exhibit's 26, 27, 47, 54 and 59, the defendant's admission of sexually explicit chats coupled with his survailed travel to Connecticut, the contents of his vehicle, his statements to police at the time of his arrest and his impeached testimony form a sufficient

basis for the jury verdict.  The Court finds no miscarriage of justice in convicting the defendant of both Counts I and II.

Accordingly the interests of justice require that the Court DENY Mr. Boisvert's motion.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  October 5, 2011.